UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IVETTTE RIVERA,

    Plaintiff,
v.                          Case No. 8:17-cv-1409-T-33TBM

UNITED HEALTHCARE SERVICES,
INC. and OPTUM BANK, INC.,

    Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Defendants' Motion to Compel Arbitration (Doc. # 37), which was filed on December 11, 2017. Plaintiff Ivette Rivera filed a Response in Opposition to the Motion on December 29, 2017. (Doc. # 44). Defendants filed a Reply (Doc. # 53) with leave of the Court. For the reasons that follow, the Court grants the Motion to Compel Arbitration and this case will be stayed pending the arbitration process.

**I.**   **Background**

On June 14, 2017, Rivera filed a pro se complaint against Defendants alleging violations of the Family and Medical Leave Act (FMLA). (Doc. # 1). Thereafter, Rivera retained counsel and filed an Amended Complaint (Doc. # 26) on October 20, 2017, asserting the following counts: violations of the FMLA (count one); equitable estoppel (count two); violations of the Florida Civil Rights Act -

disability discrimination (count three); and violations of the Florida Civil Rights Act - failure to accommodate (count four).

In response to the Amended Complaint, Defendants filed the instant Motion to Compel Arbitration. In the Motion, Defendants assert that Rivera entered into a binding Arbitration Agreement that covers all of the claims Rivera brings in this lawsuit. In response, Rivera claims the Arbitration Agreement is unenforceable because a valid and binding arbitration agreement does not exist between the parties, because the Arbitration Agreement is procedurally and substantively unconscionable, and because Defendants breached the Arbitration Agreement. The Court will address each argument in turn.

**II. Discussion**

The Federal Arbitration Act (FAA) "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). "The FAA thereby places arbitration agreements

on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. (internal quotation and citation omitted).

"State law generally governs whether an enforceable agreement to arbitrate exists." Delano v. Mastec, Inc., No. 8:10-cv-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Id. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983). And, "a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir. 2003).

The Court conducts a two-step inquiry to decide whether the parties must submit to arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1200 (11th Cir. 2004). The first step is to decide whether the parties agreed to arbitrate the dispute. Id. "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Fleetwood Enter., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). If the Court determines that the parties agreed to arbitrate, the Court then must assess "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp., 473 at 628.

**A.  Assent to Arbitrate**

"It is well established that parties cannot be forced to submit to arbitration if they have not agreed to do so." Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 Fed. Appx. 782, 785 (11th Cir. 2008). If there is a dispute regarding whether the parties agreed to arbitrate, it is for

the Court, rather than the arbitrator, to decide whether there is an agreement. Id.

As noted, Rivera claims that "[t]he arbitration agreement is unenforceable because a valid binding arbitration agreement did not exist between Plaintiff and Defendant." (Doc. # 44 at 2). To this end, Rivera specifically claims that the Arbitration Agreement is an invalid document because it did not inform her of the terms to which she would be bound. In making this argument, Rivera stresses that the procedures and rules of the American Arbitration Association were not attached to the Arbitration Agreement. And, Rivera was never "told where she could locate and review the complete rules prior to requiring her signature." (Id. at 3).

The Court recognizes that Rivera relies on Spicer v. Tenet Florida Physician Services, LLC, 149 So. 3d 163 (Fla. 4th DCA 2014), a case in which the court invalidated an arbitration agreement because it did not provide an adequate description of the arbitration procedures to be used. However, that case is easily distinguishable from the present one. In Spicer, the entire employment agreement, including the putative agreement to arbitrate, was contained

in a pithy two-page form letter. That letter specifically contained the follow statement about "conflict resolution:"

> *Conflict Resolution*: As a condition of employment, you agree that any and all disputes regarding your employment with [Tenet], including disputes relating to the termination of your employment, are subject to the Tenet Fair Treatment Process, which includes final and binding arbitration. You also agree to submit any such disputes for resolution under that process, and you further agree to abide by and accept the decision of the arbitrator as the final and binding decision and exclusive resolution of any such disputes.

Id. at 164. The Fair Treatment Process was not attached to the employment agreement that Spicer signed in December of 2011. Id. Weeks after Spicer signed the agreement, she was given directions for accessing the website where the Fair Treatment Policy was located. Id. The Fair Treatment Policy specified as follows regarding arbitration:

> The Arbitration will be administered by the American Arbitration Association (AAA:). The Company and the employee will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but the employee's share of such cost shall not exceed an amount equal to one day's pay (for exempt employees) or eight times the employee's hourly rate (for non-exempt employee) or the local filing fee, whichever is less.
> . . . .
> **Authority of Arbitrator:** The arbitrator has the authority to award any remedy that would have been available to the employee had the employee litigated the dispute in court under applicable law.

Id. at 165.

The Spicer court explained: "Provisions in a contract providing for arbitration must be definite enough so that the parties at least have some idea as to what particular matters are to be submitted to arbitration and must set forth some procedures by which arbitration is to be effected." Id. at 165-66. The employment agreement in Spicer did not pass muster, and it did not incorporate the Fair Treatment Process by reference.

In contrast, the Arbitration Agreement in the present case is lengthy and detailed. It describes with excruciating detail the exact procedure to be used during every phase of the arbitration. (Doc. # 37-2, ¶ C). It is not necessary for the Court to repeat the nearly five pages of procedure contained in the Arbitration Agreement. Just to name some of the highlights, the Arbitration Agreement before the Court delineates the manner of selecting the arbitrator, the discovery process, the cost, and the procedures to be using during the arbitration hearing. In Malone & Hyde, Inc. v. RTC Transportation, Inc., 515 So. 2d 365, 366 (Fla. 4th DCA 1987), the court named some of the essential terms that must be contained in an arbitration

agreement, including "the form and procedure for arbitration, the number of arbitrators, how the arbitrators were to be selected [and] the issues to be decided by arbitration." Id. at 365. The Arbitration Agreement here amply satisfies these requirements and also provides additional details.

Nevertheless, Rivera argues that the Court should invalidate the Agreement because a copy of the AAA rules was not attached to the Agreement. The Court also rejects this argument because the procedures to be used are included in the Arbitration Agreement, and if Rivera was interested in reviewing the AAA rules, she could have easily located the rules online, as they are public information.

As to the scope of the Arbitration Agreement, it specifies that it covers "employment-related disputes" including:

> the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments and regulations; Title II of the Genetic Information Nondiscrimination Act of 2008; state human rights and non-discriminate laws; whistleblower or retaliation claims; breach of contract, promissory estoppel, or any other contract claim, and defamation, employment negligence, or any other tort claim not specifically excluded from coverage.

8

(Doc. # 37-2 at 6). And, Rivera has not advanced the argument that her claims fall outside the scope of the Arbitration Agreement.

In sum, the Court roundly rejects Rivera's contention that the Arbitration Agreement is invalid, including her argument that the Agreement failed to attach a copy of the AAA's rules and procedures. The Arbitration Agreement is sufficiently detailed, and it was not necessary to attach the AAA's rules because the procedures for arbitration are adequately described in the Arbitration Agreement itself. The Court finds that the Arbitration Agreement is valid, and, by its clear terms, applies to the four counts named in the operative Complaint.

### B. <u>Substantive and Procedural Unconscionability</u>

Next, the Court must determine whether legal constraints external to the parties' agreement foreclose arbitration of the claims. Although a bargaining disparity existed at the time of the agreement, Plaintiff has failed to show unconscionability. In Florida, a contract is unconscionable only if both procedural and substantive unconscionability exist, "although not in equal

9

amounts." VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc., 912 So. 2d 34, 39 (Fla. 4th DCA 2005).

Plaintiff offers several reasons as to why the arbitration agreement should be considered unconscionable, including that the arbitration agreement was a contract of adhesion, presented to Rivera on a take-it-or-leave-it basis. Rivera also reasserts the unavailing contention that the Agreement lacked sufficient detail and failed to attach the AAA rules. She further claims that she did not have the opportunity to investigate what she was signing and that her remedies were unfairly limited by the Arbitration Agreement.

The Court is unconvinced that the circumstances surrounding Rivera's signing of the Arbitration Agreement warrant a finding of unconscionability. First, the Court finds that the Arbitration Agreement is not a contract of adhesion. And, Rivera has not presented any substantive evidence demonstrating that the Arbitration Agreement was presented on a take-it-or-leave-it basis. Rivera's counsel remarks that Rivera was not presented with the opportunity to meaningfully review employment documents or to seek the assistance of counsel before signing documents. However, Rivera does not present any evidence that she asked for

additional time to review these important documents, or that she asked for the chance to review the Arbitration Agreement with her attorney and was denied the same. Nor has Rivera asserted that she asked questions about the Arbitration Agreement that went unanswered.

And, while Rivera's employment was conditioned on her agreement with the terms of the Arbitration Agreement and other documents, such manner of acceptance does not necessitate the finding of a contract of adhesion. See Tranchant v. Ritz Carlton Hotel Co., LLC, No. 2:10-cv-233-FtM-29DNF, 2011 U.S. Dist. LEXIS 35099 (M.D. Fla. Mar. 31, 2011)("[I]t is not clear whether the [arbitration] agreement was offered on a 'take-it-or-leave-it basis, but even if it was, plaintiff has not shown that he lacked employment alternatives if he chose to 'leave it.'"); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1364 (11th Cir. 2005)(affirming order compelling arbitration even though the employer expressly stated that the arbitration policy was "a condition of continued employment").

The Court also rejects Rivera's contention that the agreement is substantively unconscionable based on the manner in which it limits her legal remedies. Rivera does

not identify any of the remedies she claims are unavailable under the Arbitration Agreement. Tellingly, the Arbitration Agreement places no limits on her remedies and specifically states that the arbitrator "shall have the authority to grant **any remedy or relief** (including attorneys' fees where authorized by statute) that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory limitations on damages." (Doc. # 37-2 at 10)(emphasis added). The Court agrees with Defendants that "Plaintiff's remedies are expressly not limited by the arbitration agreement." (Doc. # 53 at 6).

Finally, the Court addresses, and ultimately jettisons, Rivera's contention that the Court should deny the Motion to Compel Arbitration because Defendants materially breached the Arbitration Agreement. Rivera claims: "Defendant has failed to comply with its own dispute resolution process. Defendant's refusal to comply is a material breach because the graduated-step system, present in Defendant's IDR process assumes that the previous steps were completed. Defendant's refusal puts Plaintiff at a disadvantage once in the arbitration process." (Doc. # 44 at

7). Rivera does not cite the language in the Arbitration Agreement she contends Defendants violated. The Court's review of the Agreement reveals that Defendants were not obligated to follow the "IDR" or Internal Dispute Resolution. In fact, the Arbitration Agreement states:

> Employees are **encouraged** to exhaust the IDR process before initiating arbitration. If an employment-related dispute is not resolved through the IDR process and the dispute is based on a legal claim not expressly excluded from this Policy, any party to the dispute may initiate the arbitration process. **UnitedHealth Group is not required to follow the steps of either IDR or the Policy before initiating or implementing any disciplinary action.**

(Doc. # 37-2 at 6)(emphasis added). Although Plaintiff raises a myriad of issues, the Court does not see any legal constraints external to the parties' agreement that forecloses the arbitration of those claims.

### III. Conclusion

After a careful review of the arguments presented, the Court determines that the Arbitration Agreement encompasses all of the claims of this case. Finding no legal constraints to forestall arbitration, the Court concludes that arbitration is now appropriate, and this case will be stayed pending the completion of the arbitration process.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Compel Arbitration (Doc. # 37) is **GRANTED** to the extent that the Court compels the parties to participate in the arbitration process.

(2) This case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the completion of the arbitration process.

(3) The parties are directed to file a status report regarding the arbitration process on April 30, 2018, and every 90 days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida on this 30th day of January, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE